[No. 3346.]

E. Miller, *alias* McCain, *v.* The State.

1. Theft — Evidence — Declarations — Charge of the Court.— In this State it is well settled that the statement of a defendant with regard to the character of his right to stolen property found in his possession, if reasonable and probable, and explanatory of his possession, and made when he was first found in possession, imposes on the State the *onus* of showing the falsity of the explanation.   And when the evidence invokes this legal principle, it is part of the law of the case, and it is incumbent on the trial court to give it in charge to the jury.

2. Same.— In a trial for theft of a mule, a State's witness testified that the defendant traded to him the animal, and told him that he, the defendant, got it from one McBee, etc.   The State neither produced McBee as a witness, nor accounted for its failure to do so.   *Held,* that this explanation was reasonable and probable, and devolved on the State the burden of proving its falsity, and on the trial court the duty of so instructing the jury.

3. Evidence — Practice.— When direct and positive proof is attainable, circumstantial evidence cannot be resorted to; nor is secondary evidence competent when it is disclosed that better and more satisfactory evidence of the contested fact is attainable, and it is neither produced nor accounted for.

4. Theft — Fact Case.— See evidence *held* insufficient to sustain a conviction for theft of a mule.

Appeal from the District Court of Collin.   Tried below before the Hon. R. Maltbie.

The conviction in this case was for the theft of a mule, the property of William Turner, in Collin county, Texas, on the 7th day of March, 1884. A term of five years in the penitentiary was the penalty assessed.

William Turner, the owner of the alleged stolen animal, was introduced to prove his non-consent to the taking, but the defendant establishing the fact that the said Turner had been convicted of the theft of a cow, objection to his competency as a witness was sustained.

Alfred Chapman testified, for the State, that he was living with and working for William Turner when the latter lost the mule involved in this prosecution. Turner then lived on M. M. Boyd's place, about eighteen miles from McKinney, in Collin county. Witness could not remember the date on which the mule was lost, but it was some three months or thereabouts prior to this trial. Witness plowed that mule on the evening before it was taken, and at night staked him out with one of Mr. Turner's ponies in the pasture. The mule was a dark brown or black animal, about —— hands high. On missing the mule, witness looked around and found where some one had thrown down the field fence. After this, Turner and witness looked throughout the neighborhood for the mule, but did not find it. About 8 or 9 o'clock at night, on the night that the fence was pulled down, witness heard the barking of dogs on Turner's place. The mule was taken out of the pasture at a point southeast of the house. The witness next saw the mule a day or two prior to this trial, when it was ridden to court by Mr. Turner.

Cross-examined, the witness stated that he went to Joe Parker's house between sundown and dark on the evening that the mule was stolen. He did not know how long he stayed at Parker's, but when he heard the dogs barking he was on his way back to Turner's. Witness hunted for the mule until 10 o'clock on the next day. Next day the witness left Turner and went to work for Mr. Boyd in McKinney. The fence around the pasture from which the mule was taken was a rail fence. Witness knew the defendant, but for some time prior to the alleged theft had not seen him in the neighborhood.

John Whitfield was the next witness for the State. He testified that he had known the defendant since 1872. He lived on Berne's place, about five miles north from Turner's, until December, 1883, when his mother moved to Denton county. Witness saw a negro plowing the mule on the 18th of March, and heard of the loss of

the mule on the following Sunday. Witness saw where some one, or some thing, had pulled apart the stakes of the fence around the field in which the mule was said to have been staked. The fence was an upright picket fence. The mule was heard from at Louisville, Denton county, about two weeks after its loss. Witness went with Turner to Louisville, and found the mule at Taylor Boyd's place. Taylor Boyd agreed to pay $3.50 charges on the mule, and the witness and Turner took it back home.

Cross-examined, the witness stated that the defendant's mother lived in Denton county. Witness had not, prior to the theft of the mule, seen the defendant in Turner's neighborhood since about the first of December, 1883. Witness was of opinion, though not certain, that the horse track with the mule, leading out of the pasture from which the mule was taken, showed the impression of but one shoe. Turner came to the witness's house, and the two started from there together in search of the mule. Turner lived about eighteen miles from the town of Plano, which was distant from Louisville about twenty miles. Both Plano and Louisville are west from Turner's house, and in going to Louisville, witness and Turner passed Plano.

William Foreman testified, for the State, that he lived one mile east of Plano, in Collin county, Texas, and about eighteen miles from where he was informed Turner lived. On the night of the 19th or the morning of the 20th of March, 1884, the defendant came to the witness's house and asked to stay until daybreak. This was about 4 o'clock, A. M. He had with him a horse, and also a brown-colored mule which he led by a halter. On the next day the witness saw the defendant about six miles west of Louisville. He had then sold the mule to one Rodenbaugh in Louisville. About two weeks after this, the witness saw Whitfield and Turner returning to Collin county from Louisville. Turner then had the mule in his possession. When the defendant brought the mule to witness's house he told the witness that he was from Hunt county, and was on his way to Wise county. He left witness's house about 8 o'clock, A. M., on March 20, 1884.

Cross-examined, the witness stated that the horse ridden by the defendant when he stopped at witness's house, as stated, had shoes on both fore feet but was not shod behind. Two other parties were with defendant, but they did not stop, nor did the witness know the route they took after leaving his house. He did not know whether the two parties mentioned were white or black, or whether they went back or straight on.

Mr. Rodenbaugh, for the State, testified that the defendant came to his house in Louisville between 11 and 12 o'clock on March 21, 1884, and remained until the next morning. He had with him a mule and a horse. The witness traded with him for the mule, giving him a buggy and $20. He told the witness that he got the mule from Mr. McBee, and, as the witness understood him, out on Grand Prairie. Witness afterwards turned the mule over to an old negro named Turner. Defendant told witness that he had harvested his crop and wanted to sell the mule, as he could then do without him.

Cross-examined, the witness stated that the defendant told him that his mother lived on Grand Prairie, which was on the Denton and Wise county lines. Witness paid defendant the full value of the mule. The State closed.

M. M. Boyd testified, for the defendant, that he had heard Turner and McBee speak of the mule trade in the presence of each other. Both Turner and McBee told witness that McBee had sold the mule to Turner on credit, retaining a vendor's lien for the purchase money, and that the understanding was that Turner was not to trade the mule until the purchase money was paid. Witness had heard Turner say that he had paid $25 of the purchase money.

New trial was asked for the following reasons:

1. "Because the verdict is contrary to the evidence in this: The only evidence against the defendant was that of possession of the animal some twenty miles from where it was taken.

2. "Because the court erred in the admission of evidence.

3. "Because the court erred in the admission of the acts of William Turner.

4. "Because the court erred in refusing to give special charges asked by defendant.

5. "Because the court erred in holding that it was not necessary to prove the want of consent of Ike McBee, the real owner of the mule.

6. "Because the court failed to charge the law.

7. "Because the evidence in the case shows that Ike McBee sold the mule to William Turner, and that the said Ike McBee expressly reserved title to said property until paid for, and that the want of consent of the said McBee should have been proved."

*Abernathy Bros.*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. On the trial of the case the State's witness Rodenbaugh, to whom defendant sold the mule in question,

testified: "Defendant came to my house in Louisville about 11 or 12 o'clock on the 21st day of March, A. D. 1884, and stayed until next morning. He had with him a mule and horse. I gave him a buggy and $20 for the mule. He said he got the mule from one McBee, and, as I thought, out on Grand Prairie," etc.

It is a general rule of law, now well settled in this State, that the statement of a defendant with regard to the character of his right to the property, when first found in possession of stolen property, and explanatory of his possession of it, if reasonable and probable, devolves the *onus* upon the State to show that such explanation is false. (*Garcia* v. *The State*, 26 Texas, 209; *Galloway* v. *The State*, 41 Texas, 289; *Johnson* v. *The State*, 12 Texas Ct. App., 335; *Sitterlee* v. *The State*, 13 Texas Ct. App., 587; *Ross* v. *The State*, 16 Texas Ct. App., 554; *Perry* v. *The State*, 41 Texas, 483.)

This rule of law was not presented in the charge of the court to the jury, and the defendant was entitled to have them instructed with regard to the law on this subject. It was a part of the law of the case. Defendant's statement that he had gotten the mule from McBee was both natural, reasonable and probable, and it devolved upon the State to prove the falsity of the statement. This the State has only done inferentially, and by means of circumstantial evidence, and that, of itself, not of the most cogent character. McBee, the party from whom he stated he had gotten the mule, and who could have proved or disproved the fact, as the case may be, by positive testimony, was neither a witness in the case, nor is his absence accounted for. It is a rule of evidence, well settled, that circumstantial testimony cannot be resorted to where direct and positive proof is attainable; and that secondary evidence cannot be resorted to where it is disclosed that there is better and more satisfactory evidence of the fact sought to be established. (*Cotton* v. *Campbell*, 3 Texas, 493; *Porter* v. *The State*, 1 Texas Ct. App., 394; *Stewart* v. *The State*, 9 Texas Ct. App., 321; *Hunter* v. *The State*, 13 Texas Ct. App., 16; *Wyers* v. *The State*, 13 Texas Ct. App., 57; *Baldwin* v. *The State*, 15 Texas Ct. App., 275, and *Dixon* v. *The State*, 15 Texas Ct. App., 480.)

For the error in the charge of the court, as above pointed out, and because we believe that the evidence on which this conviction was had was insufficient, and that the court should have granted a new trial, the motion of appellant for a rehearing is granted, and the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

[Opinion delivered April 18, 1885.]